IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00551-BO

| | |
|---|---|
| ACE FUNDING SOURCE, LLC, )<br>)<br>Appellant, )<br>v. )<br>)<br>WILLIAMS LAND CLEARING, )<br>GRADING, and TIMBER LOGGER, LLC, )<br>)<br>Appellee. ) | O R D E R |

Before the Court is Defendant-Appellant Ace Funding Source, LLC's Motion for Leave to Appeal. [DE 2]. Ace Funding moves for leave to appeal an interlocutory order of the Bankruptcy Court for the Eastern District of North Carolina denying Ace Funding's motion to dismiss Plaintiff-Appellee Williams Land Clearing, Grading, and Timber Logger, LLC's amended complaint. For the following reasons, Ace Funding's Motion for Leave to Appeal is denied.

I.  **Background**

This case began long before the instant motion with four revenue purchase agreements between Williams Land Clearing and Ace Funding. Per those agreements, Williams Land Clearing "sold" a percentage of its future receivables to Ace Funding for an infusion of capital. Although each revenue purchase agreement had different terms, all of them contain a New York choice-of-law provision in the event of a dispute between the parties.

And, shortly after the fourth revenue purchase agreement was executed, a dispute followed. On 11 May 2022, Ace Funding filed a lawsuit against Williams Land Clearing and its principal in the Supreme Court for the State of New York, Nassau County alleging a breach of the Fourth

Revenue purchase agreement. On 19 May 2022, the parties settled their dispute. Not long after, Williams Land Clearing breached the terms of the settlement. That authorized Ace Funding to file a stipulated default judgment. On 12 July 2022, the Supreme Court of the State of New York, Nassau County entered a default judgment against Williams Land Clearing and Lamonte Williams

In September 2022, Williams Land Clearing filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina. Ace Funding then filed a proof of claim in the Chapter 11 proceeding.

In February 2023, Williams Land Clearing initiated adversary proceedings in the bankruptcy court. Williams Land Clearing alleges primarily that the revenue purchase agreements are unethical and criminally usurious loan agreements under New York law. It seeks to avoid the transfers of receivables under 11 U.S.C. § 548(a)(1)(b); to disallow Ace Funding's bankruptcy claim in its entirety, or at least, until Ace Funding turns over the fraudulent transfers or preference payments under 11 U.S.C. § 550; to equitably subordinate Ace Funding's claims; to recover damages for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1; to avoid preference payments under 11 U.S.C § 547(b); and to recover the property from any avoided transfer under 11 U.S.C § 550.

In response, Ace Funding moved to dismiss the adversary proceedings, arguing (1) that the bankruptcy court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine and (2) that the complaint failed to state a claim for relief. On 19 September 2023, the bankruptcy court held a hearing on the motion to dismiss. After the hearing, it orally denied the motion from the bench. The next day, the bankruptcy court issued a written order memorializing its decision. [DE 1-1]. Now Ace Funding moves for leave to file an interlocutory appeal of that order.

## II. Analysis

Because Ace Funding moves for leave to appeal an interlocutory order of the bankruptcy court, this Court will begin with the standard governing those requests. Then, the Court will apply that standard to the two issues that Ace Funding contends the bankruptcy court wrongly decided, taking up the *Rooker-Feldman* doctrine first and the choice-of-law provision second.

### A. The standard governing interlocutory appeals of bankruptcy court orders

Under 28 U.S.C. § 158(a)(3), appeals from interlocutory orders in bankruptcy court may proceed in district court only after leave is granted. Such appeals from bankruptcy courts to district courts are to be taken in the same manner as appeals are generally taken from the district courts to the courts of appeals. § 158(c)(2).

28 U.S.C. § 1292(b) governs interlocutory appeals from the district courts to the circuit courts of appeals. Section 1292(b) authorizes leave for an interlocutory appeal of an order where that order "involves [(1)] a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the termination of the litigation." § 1292(b). District courts in the Fourth Circuit use this tripartite standard when considering granting leave to interlocutory appeals from the bankruptcy courts. *E.g.*, *Public-Sector Sols., Inc. v. Hunt & Assocs., P.C.*, 626 F. Supp. 3d 811, 813–14 (D. Md. 2022); *Askri v. Fitzgerald*, 612 B.R. 500, 506 (E.D. Va. 2020); *In re Biltmore Invs., Ltd.*, 538 B.R. 706, 710–11 (W.D.N.C. 2015); *First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364, 371 (E.D. Va. 2012).

Begin with the first requirement, that the order involves a controlling question of law. This requirement is divided into its two components: the question must be one of law and it must be controlling. To be a question of law appropriate for interlocutory review, that question must be "a pure question of law, i.e., an abstract legal issue that the [district court] can decide quickly and

3

cleanly." *United States ex rel. Michaels v. Agape Senior Cmty, Inc.*, 848 F.3d 330, 341 (4th Cir 2017) (citations and internal quotations marks omitted). That question of law must not turn on genuine issues of fact or depend on whether the court properly applied settled law to the facts. *Id.* And for that "pure question of law" to be controlling, reversal of the bankruptcy court's order must either end the case or materially affect the outcome of the litigation. *Biltmore Invs.*, 538 B.R. at 711; *Public-Sector Sols.*, 626 F. Supp. 3d at 814; *Travelstead v. Valazquez*, 250 B.R. 862, 866 (D. Md. 2000).

Next, the second requirement, that a substantial ground for difference of opinion exists. "[A]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *In re Wijewickrama*, No. 1:16-cv-00347, 2018 WL 2212983, at *3 (W.D.N.C. Mar. 15, 2018). But the mere presence of a disputed issue is not enough to demonstrate a substantial ground for a difference of opinion. *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013). Instead, "the substantial ground for a difference of opinion must arise out of a genuine doubt as to whether the [bankruptcy court] applied the correct legal standard in its order." *Wyeth v. Sandoz, Inc.*, 703 F.Supp.2d 508, 527 (citations and internal quotations omitted). A legal standard is not infirm because reasonable judges may apply the same standard to similar facts and reach different results. *Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 527 (D. Md. 2016). What's more, a mere belief that the bankruptcy court wrongly decided the issue or incorrectly applied the governing legal standard does not present a substantial ground for difference of opinion. *See Karanik v. Cape Fear Acad., Inc.*, No. 7:21-CV-169, 2022 WL 16556774, at *5 (E.D.N.C. Oct. 31, 2022).

Finally, the third requirement, that the immediate appeal may materially advance the termination of the litigation. In determining whether an immediate appeal would have such an

4

effect, "a district should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016) (citation and quotation marks omitted); *see also Lynn*, 953 F. Supp. 2d at 626 (same).

The decision to grant leave is left to the discretion of the district court. *In Re Wallace & Gale Co.*, 72 F.3d 21, 25 (4th Cir. 1995). The Fourth Circuit has "cautioned that § 1292(b) should be used sparingly and thus its requirements must be strictly construed." *Agape Senior Cmty.*, 848 F.3d at 340 (citation and internal quotation marks omitted).

### B. Neither issue Ace Funding raises meets the standard.

Ace Funding asserts that the order denying its motion to dismiss presents two issues that satisfy the high standard under § 1292(b). First, it contends the *Rooker-Feldman* doctrine precludes subject-matter jurisdiction over Williams Land Clearing's claims. Second, it posits that New York choice-of-law provision in the revenue purchase agreements is unenforceable because it violates a fundamental public policy of North Carolina. The Court is not persuaded that either is worthy of interlocutory review.

The Court starts with the *Rooker-Feldman* doctrine, "which strips federal courts of subject-matter jurisdiction when 'state court losers complain of injuries cause by state-court judgments' in district courts." *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (cleaned up)). Here, Ace Funding contends that the *Rooker-Feldman* doctrine precludes subject-matter jurisdiction because a ruling from the bankruptcy court on Williams Land Clearings claims arising from the revenue purchase agreements would amount to a collateral attack on the stipulated default judgment or the indebtedness it created.

5

Williams Land Clearing does not dispute that the application of the *Rooker-Feldman* doctrine is a pure question of law. It does reject, however, the assertion that it is "controlling" in the sense that (1) reversing the bankruptcy court's order would terminate the action, or (2) determining the issue on appeal would materially affect the outcome of the bankruptcy proceedings. To be sure, if the *Rooker-Feldman* doctrine applied, the bankruptcy court would lack subject-matter jurisdiction over some of Williams Land Clearing's claims involving the fourth revenue purchase agreement. But Williams Land Clearing's claims are not limited only to the Fourth Revenue Purchase Agreement. Thus, the question is only "controlling" in the weakest sense: it would not terminate the action in its entirety and might materially affect the outcome of the case.

While failing to show a controlling question of law would be sufficient to deny leave to appeal without considering the remaining requirements, *see Public Sector Sols.*, 626 F. Supp. 3d at 814, the Court does not have to perform a hypothetical application of the *Rooker-Feldman* doctrine to Williams Land Clearing's claims. Ace Funding's showing on the second requirement provides reason enough to deny leave for an appeal.

On the second requirement, a substantial ground for difference of opinion, Ace Funding's argument boils down to a disagreement with the bankruptcy court's application of *Rooker-Feldman* to Williams Land Clearing's claims. "The antithesis of a proper 1292(b) appeal is one that turns on . . . whether the [bankruptcy] court properly applied settled law." *McFarlin v. Conseco Servs.*, 351 F.3d 1251, 1259 (11th Cir. 2004). The contours of the *Rooker-Feldman* doctrine are well established at this point. *See, e.g., Wills v. Bank of New York Mellon*, No. 3:22-cv-020005, 2023 WL 416555, at *2 (D. Or. Jan. 26, 2023) (denying leave for interlocutory appeal because "[t]he *Rooker-Feldman* Doctrine is well-established and there is not substantial ground

6

for difference of opinion as to its application generally or its application to the facts [in that case]."). In short, the bankruptcy court's application of the *Rooker-Feldman* does not present a controlling question of law as to which there is a substantial ground for difference of opinion. The Court, therefore, denies leave to appeal on this issue.

The Court now turns to Ace Funding's second issue—the bankruptcy court's ruling enforcing New York choice-of-law provision. Ace Funding argues that the choice-of-law issue is outcome determinative because of the differences between New York and North Carolina law on usury. Williams Land Clearing seeks to set aside the revenue purchase agreements as criminally usurious loans under New York law. But North Carolina law, Ace Funding argues, prevents corporate borrowers like Williams Land Clearing from claiming usury. *See* N.C. Gen. Stat. § 24-9(a)(3), (b). Given these fundamental differences, Ace Funding contends that enforcing the choice-of-law provision in the revenue purchase agreements would violate North Carolina's public policy.

But as with the bankruptcy court's application—or non-application, really—of the *Rooker-Feldman* doctrine, the Court is not persuaded that the choice-of-law issue satisfies the standard for interlocutory review. The Court will assume without deciding that Ace Funding's assertions that the bankruptcy court was the first court in North Carolina, state or federal, to address this precise question of the interplay between North Carolina's public policy is correct. But a question of first impression alone is not enough. *See Wyeth*, 703 F. Supp. 2d at 527 ("The mere presence of a disputed issue that is a question of first impression, . . . standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."). (cleaned up) (citation and internal quotation marks omitted).

Again, the substantial ground for difference of opinion looks to disagreement over the correct legal standard to apply. *See Wyeth*, 703 F. Supp. 2d at 527; *see also, e.g., United States v.*

7

*Zak*, 580 F. Supp. 3d 1351, 1357 (N.D. Ga. 2021); *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014). The standard for giving effect to choice-of-law provisions in North Carolina is well established. *See Vizant Techs., LLC v. YRC Worldwide, Inc.*, 373 N.C. 549, 556, 838 S.E.2d 616, 620 (2020). So too is the standard for when such provision will not be given effect because they violate a fundamental public policy. *See Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 857–858 (1988).

Given these well-established standards, this Court is left with only Ace Funding's belief that the bankruptcy court incorrectly applied these governing standards, but belief of the incorrect application of standard alone does not present a substantial ground for difference of opinion about that standard itself. *See Howmedica Osteonics Corp. v. Howard*, No. 19-cv-19254, 2024 WL 982089, at * (D.N.J Mar. 6, 2024) (finding no substantial difference of opinion over application of established choice-of-law framework); *Harris v. Kellogg, Brown & Root Servs.*, No. 08-653, 2016 WL 1660203, at *16 (W.D. Pa. Apr. 27, 2016) (concluding that second § 1292(b) factor not met because "mere disagreement with the [c]ourt's application of well-settled Pennsylvania choice of law principles to the facts and circumstances of this case do not suffice to demonstrate a substantial ground for difference of opinion"). Accordingly, Ace Funding has not shown that the choice-of-law portion of the bankruptcy court's order involves an issue worthy of interlocutory appeal.

## III. Conclusion

For these reasons, Ace Funding's Motion for Leave to Appeal [DE 2] is DENIED.

SO ORDERED, this __1__ day of July 2024.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE